# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| COAST TO COAST AUTO SALES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 1:13-cv-00011-TWP-DKL |
| SECURA INSURANCE, INC., | ) |
| Defendant. | ) |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-motions for summary judgment. Defendant Secura Insurance, Inc. ("Secura") moved for summary judgment (Dkt. 40) on Plaintiff's declaratory judgment, breach of contract, and bad faith claims. Plaintiff Coast to Coast Auto Sales, Inc. ("Coast to Coast") moved for summary judgment (Dkt. 44) only on its declaratory judgment and breach of contract claims. For the reasons set forth below, the Court **GRANTS** Coast to Coast's motion and **GRANTS in part** and **DENIES in part** Secura's motion.

## I. BACKGROUND

The following facts are considered undisputed for the purposes of summary judgment. Coast to Coast is a business located in Fishers, Indiana that is engaged in the selling of motor vehicles. It is the named insured of a policy of insurance issued by Secura ("the Policy"). The Policy is a garage policy[1], which includes both liability and physical damage coverage. Coast to Coast also purchased a False Pretense Endorsement, which provides physical damage coverage for a "loss" to an "auto" caused by "[s]omeone causing you to voluntarily part with a covered

---

[1] A commercial auto policy designed to address the needs of auto dealers. Coverages include garage liability, garagekeepers, and auto physical damage; other coverages are available by endorsement. http://www.irmi.com/online/insurance-glossary/terms/g/garage-policy.aspx

'auto' by trick, scheme, or under false pretenses." Dkt. 42-3 at 56. The false pretense coverage would not apply "to a loss in which for any reason a bank or any other drawee fails to pay." Dkt. 42-3 at 56. Under the Policy, the term "loss" is defined as "direct and accidental loss or damage." Dkt. 42-3 at 50.

The Liability Coverage portion of the Policy covers the insured's liabilities to third parties. It includes an exclusion for loss caused by "delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." Dkt. 42-3 at 41.

On December 1, 2011, Coast to Coast sold a Mercedes Benz S550 ("the Mercedes") to Timothy Dunn ("Mr. Dunn") pursuant to an installment sales contract. Mr. Dunn signed the necessary paperwork and provided proof of identity and place of residence. The Dealer Agreement included a clause that for every installment sales contract which Coast to Coast sold to The Huntington National Bank ("Huntington Bank"), Coast to Coast represented and warranted that the vehicle sold was "delivered to the Customer at the dealer's place of business unless another place for delivery is approved in advance by Huntington [Bank]." Dkt. 42-1 at 16. Mr. Dunn did not secure the vehicle at the Coast to Coast dealership in Indiana; instead, Coast to Coast shipped the Mercedes to Mr. Dunn at an address that he provided in the state of Georgia. Coast to Coast also arranged financing for Mr. Dunn's purchase of the Mercedes with Huntington Bank pursuant to a Dealer Agreement between Coast to Coast and Huntington Bank. The Dealer Agreement further provided that if Coast to Coast breached the agreement with respect to an installment sales contract, Coast to Coast was obligated to repurchase that installment sales contract.

On December 15, 2011, Mr. Dunn also purchased a 2002 Lexus SC430 ("the Lexus") from Coast to Coast pursuant to an installment sales contract. Again, Mr. Dunn signed the

2

necessary paperwork and provided proof of his identity and place of residence. Coast to Coast shipped the Lexus to the same address in Georgia. Coast to Coast arranged financing for the Lexus through Wells Fargo Dealer Services ("Wells Fargo") pursuant to a Dealer Agreement between Coast to Coast and Wells Fargo. The Dealer Agreement provided that for every installment sales contract sold to Wells Fargo by Coast to Coast, Coast to Coast represented and warranted that it would perfect Wells Fargo's security interest in the motor vehicle within 30 days of the date of the installment sales contract. It further provided that if Coast to Coast breached the Dealer Agreement with respect to an installment sales contract, Coast to Coast was obligated to repurchase that installment sales contract.

Thereafter, Mr. Dunn failed to make payments on the loans to either Huntington Bank or Wells Fargo and Coast to Coast had failed to perfect Wells Fargo's security interest in the Lexus within 30 days, as required by the Dealer Agreement. As a result, on April 11, 2012, Wells Fargo sent Coast to Coast a letter requesting that it repurchase the installment sales contract for the Lexus. On April 25, 2012, Huntington Bank sent Coast to Coast a letter requesting that Coast to Coast repurchase the installment sales contract for the Mercedes because Coast to Coast did not deliver the Mercedes at its place of business or a location approved by Huntington Bank. As required, Coast to Coast repurchased both installment sales contracts according to the terms of the respective Dealer Agreements. Coast to Coast then tried to contact and locate Mr. Dunn, but was unsuccessful.

On May 1, 2012, Coast to Coast filed a police report with the Fishers Police Department. An investigation revealed that there was no Georgia resident named "Timothy Dunn" and the driver's license provided to Coast to Coast was fraudulent. Coast to Coast has not been able to

locate the person purporting to be Timothy Dunn, nor has it located or recovered the Mercedes and Lexus.

On June 5, 2012, Coast to Coast submitted claims to Secura for coverage under the False Pretense Endorsement of the Policy for the loss of both the Mercedes and Lexus. Coast to Coast's claims were for the actual cash value of the vehicles. On September 10, 2012, Secura denied Coast to Coast's claims in writing, citing Coast to Coast's breach of the Dealer Agreements and the exclusion that false pretense coverage does not apply "to a loss in which for any reason a bank or any other drawee fails to pay." Dkt. 42-10 at 2; Dkt. 42-11 at 2. Although the exclusion was cited, Secura acknowledges that this exception does not apply under the facts of this case.

Coast to Coast filed this suit in state court and it was removed to federal court on January 3, 2013. Coast to Coast seeks declaratory judgment that Secura is obligated to provide coverage and damages for Secura's breach of contract when it denied Coast to Coast's claims, and damages for bad faith denial of the claims. On November 4, 2013 Secura moved the Court to enter summary judgment in its favor on all counts. Exactly one month later, on December 4, 2013, Coast to Coast filed its cross-motion for partial summary judgment.

## II. **LEGAL STANDARD**

Summary judgment is only appropriate by the terms of Rule 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment*

*Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## III. DISCUSSION

Secura admits that Mr. Dunn bought the Mercedes and Lexus under false pretenses, but denies that Coast to Coast suffered a covered loss as a result. Rather, Secura contends that the loss suffered by Coast to Coast results from its breach of the Dealer Agreements. It further contends it did not act in bad faith when it denied Coast to Coast's claims. As will be discussed below, the Court is not persuaded by Secura's argument that Coast to Coast did not suffer a covered loss under the False Pretense Endorsement. However, the Court agrees that Secura did not act in bad faith.

### A. Interpretation of Insurance Contracts

Under Indiana law, the interpretation of an insurance policy is a question of law appropriate for summary judgment. *Nat'l Athletics Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning[.]" *Id.* Ambiguous language in insurance policies, however, will be "strictly construed" against the insurance company. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997). "Construction of an insurance policy which both parties assert is unambiguous is a judicial function." *Davidson v. Cincinnati Ins. Co.*, 572

N.E.2d 502, 505 (Ind. Ct. App. 1991).

## B. Declaratory Judgment and Breach of Contract Claims

The facts are undisputed that Mr. Dunn used false pretenses to purchase the Mercedes and Lexus from Coast to Coast. Coast to Coast purchased additional coverage from Secura to protect itself from such losses. Secura argues that there is no loss due to false pretenses, despite Mr. Dunn's fraud, because Coast to Coast was "made whole" when it sold the installment sales contracts to Huntington Bank and Wells Fargo. In other words, because Coast to Coast was initially paid in full for the sales price of the vehicles obtained by Mr. Dunn under false pretenses, Secura argues that Coast to Coast cannot have suffered a loss from the false pretenses.

It is further undisputed that Coast to Coast breached the Dealer Agreements in connection with the sale of the Mercedes and Lexus to Mr. Dunn. Secura argues that Coast to Coast only suffered a loss in this case because it breached its contracts with Huntington Bank and Wells Fargo, requiring Coast to Coast to repurchase the installment sales contracts. At that point, Coast to Coast suffered a loss of the value of the installment sales contracts. However, this sort of loss is not covered in the Policy.

Coast to Coast argues that it has made a claim only under the physical damage portion of the Policy, and seeks only the loss of the actual cash value of the Mercedes and Lexus, which occurred when Coast to Coast sold the vehicles to Mr. Dunn. The physical damage portion of the Policy does not have any exclusion applicable to these facts, unlike the liability portion which excludes coverage of losses caused by the insured's breach of a contract. Further, Coast to Coast argues that repurchasing the loans from Huntington Bank and Wells Fargo was not a loss, but simply resulted in a change of creditor.

6

While Secura's arguments are well taken, resolving the question of whether Coast to Coast has suffered a covered loss under the False Pretenses coverage requires examination of the definition of "loss": "direct and accidental loss or damage." Dkt. 42-3 at 50. Coast to Coast asserts that the modifier "direct" is ambiguous, as stated in *Farmers Mut. Aid. Ass'n v. Williams*, 386 N.E.2d 950, 952 (Ind. Ct. App. 1979) ("'Direct' is therefore an ambiguous term, as reasonably intelligent men might honestly differ as to its meaning."). Secura argues that *Williams* is readily distinguishable, specifically because the court mentioned the appellant's former insurance claims manager's inability to define the meaning of the term "direct" as used to describe "loss" in the insurance policy. Yet the Court reads the *Williams*' court mention of the former claims manager's inability to define the term as persuasive to the court, but not determinative. Rather, the court noted, "it is not surprising that a layman such as Williams might entertain a definition at variance with that of the company." *Id.* In other words, the court acknowledged that the term "direct" was susceptible to reasonable and different interpretations.

Like in *Williams*, the term "direct" is not defined by the Policy. "A policy is ambiguous if it is susceptible to two or more reasonable interpretations such that reasonable people would differ as to its meaning." *Justice v. Am. Family Mut. Ins. Co.*, __ N.E.3d __, No. 49S02-1303-PL-221, 2014 WL 983009, at * 4 (Ind. March 13, 2014). When a policy is deemed ambiguous, it is construed against the drafter, or insurance company. In *Williams*, after finding the term "direct" ambiguous, the court held that damage to Williams' cattle as a result of a tornado could be considered a direct loss, even if the loss was not one immediately caused by the tornado. Here, Coast to Coast suffered a loss at the moment it sold the vehicles to Mr. Dunn. When Coast to Coast then sold its installment sales contracts to Huntington Bank and Wells Fargo, it transferred all interest in the vehicles to the banks. However, because any loss suffered by Coast

7

to Coast is for the actual cash value of the vehicles, it is possible that even after transferring its interest to the banks, Coast to Coast could still suffer a loss brought on by Mr. Dunn's false pretenses. The Court finds that it is the actual cash value of the vehicles, not sale price, that determines the payment under the Policy. Thus, in spite of Coast to Coast's breach of the Dealer Agreements and subsequent repurchasing of the installment sales contracts, a loss could still exist as a direct loss of Mr. Dunn's false pretenses.

It remains to be seen if Coast to Coast could recover more than the difference between the sale price and actual cash value—assuming there is a difference—once it became creditor of Mr. Dunn's installment sales contracts as the result of its own breach of the Dealer Agreements. Coast to Coast now faces a greater loss; Mr. Dunn does not exist and the vehicles cannot be recovered. This loss was caused by Mr. Dunn's false pretenses. Given Secura's and the Policy's lack of specification defining the modifier "direct"—which in its plain and ordinary meaning in this context means "a cause"[2]—the Court will apply the standard definition, which encompasses the interpretation applied in *Williams*. Coast to Coast's inability to recover the vehicles was caused by Mr. Dunn's false pretenses. The False Pretenses coverage does not contain a breach of contract exclusion. Thus, Secura's policy should extend to cover the total actual cash value of the vehicles. This is further consistent with Secura's prior coverage of a similar claim by Coast to Coast in 2008. In that claim, Coast to Coast sold a vehicle under false pretenses, sold the installment sales contract to a bank, breached the dealer agreement with that bank, repurchased the installment sales contract, filed a claim for a loss, and was covered under the False Pretense Endorsement. *See* Dkt. 45-10; Dkt. 45-11; Dkt. 45-12; Dkt. 45-13. Given this backdrop, Secura's motion on the declaratory judgment and breach of contract claims is **DENIED** and

---

[2] Black's Law Dictionary defines "direct" as used in this context as "to aim" or "to cause." Black's Law Dictionary 209 (3d pocket ed. 2006). Merriam Webster employs a substantially similar definition. *See* http://www.merriam-webster.com/dictionary/direct.

Coast to Coast's motion on these claims is **GRANTED**.

**C.      Bad Faith Claim**

With respect to the bad faith claim, Secura contends that the undisputed facts establish it did not act in bad faith when it denied Coast to Coast's insurance claims. Coast to Coast argues that this issue requires the weighing of evidence and should not be decided on summary judgment. However, given that the facts are undisputed, the Court finds that it can rule at this stage of the proceedings.

"Indiana has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993). A claim of bad faith, also called a breach of the duty of good faith, exists when the insurer breaches this duty by denying a claim when it knows there is no rational, principled basis for doing so. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). Bad faith must be proved by clear and convincing evidence. *Id.* A finding of bad faith requires evidence of a state of mind "reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005).

Coast to Coast argues that at the time Secura denied its claim, Secura relied on the exclusion that false pretense coverage would not apply "to a loss in which for any reason a bank or any other drawee fails to pay." Dkt. 42-3 at 56. Coast to Coast references a 2008 false pretenses claim, which during the course of investigating, Secura determined the same exclusion did not apply to Coast to Coast's repurchase of a loan. Thus, Coast to Coast argues, Secura had no reasonable basis to believe it could deny Coast to Coast's claim on that basis. Secura argues that the exclusion was not the sole reason for denial, noting that the denial letters reference Coast to Coast's breach of the Dealer Agreements as factoring into its decision to deny coverage. The

9

Court agrees with Secura that it had a good faith reason to contest coverage, and even though the Court finds the reason invalid, Coast to Coast has not established a genuine issue of material fact that Secura harbored dishonest purpose, moral obliquity, furtive design, or ill will. Therefore, Secura's motion on Coast to Coast's bad faith claim is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Secura's Motion for Summary Judgment (Dkt. 40) is **GRANTED in part** and **DENIED in part**. It is **GRANTED** on Coast to Coast's bad faith claim. It is **DENIED** on Coast to Coast's declaratory judgment and breach of contract claims. The bad faith claim is **DISMISSMED**. Coast to Coast's Motion for Summary Judgment (Dkt. 44) is **GRANTED** on its declaratory judgment and breach of contract claims.

The final pretrial scheduled June 4, 2014 is VACATED. The bench trial scheduled June 30, 2014 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, Indianapolis, Indiana is converted to a damages hearing to determine the amount owed to Coast to Coast for its loss

**SO ORDERED.**

Date: 04/11/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Nicholas K. Gahl
KATZ & KORIN P.C.
ngahl@katzkorin.com

Marc Andrew Menkveld
KATZ & KORIN P.C.
mmenkveld@katzkorin.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Joseph Neal Bowling
LEWIS WAGNER LLP
nbowling@lewiswagner.com